## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| Microbes, Inc. and | § | |
| Rhizogen L.L.C. | § | |
| | § | **Civil Action No. 2:09-CV-237** |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | |
| | § | |
| The Espoma Company, | § | |
| Advanced Microbial Solutions L.L.C., | § | |
| and Calloway's Nursery, Inc. | § | |
| | § | |
| **Defendants.** | § | |

---

### ANSWER WITH AFFIRMATIVE DEFENSES BY THE ESPOMA COMPANY AND CALLOWAYS' NURSERY INC. , AND COUNTERCLAIMS OF THE ESPOMA COMPANY TO PLAINTIFFS' SECOND AMENDED COMPLAINT.

---

Espoma and Calloway's (collectively "Defendants") respond to the Plaintiffs' Second Amended Complaint [Docket Number 56] by the following Answer with Affirmative Defenses, and Counterclaims by Espoma individually.

Except to the extent expressly and specifically admitted below, Defendants deny each and every allegation in the Seconded Amended Complaint. Any factual allegation admitted below is admitted only as to the specific admitted facts, not as to any purported conclusions, characterizations, implications, or speculations that arguably follow from the admitted facts. Defendants deny that Plaintiffs are entitled to the relief requested or any other relief. Defendants answer the allegations corresponding to the numbered paragraphs in the Second Amended Complaint based upon Defendants' current information and belief, as follows.

## THE PARTIES

1-5.    Defendants do not know, but will accept as being  true unless corrected by another party, the allegations of paragraphs 1-5.   Espoma admits the allegations of  paragraph 3 concerning Espoma as a party.  Calloway's admits the allegations of  paragraph 5 concerning Calloway's as a party.

## JURISDICTION AND VENUE

6-9.    Defendants deny all allegations of infringement and inducing infringement made in these paragraphs.  Defendants further deny the allegation in paragraph 8 that Espoma has entered into a business relationship with Calloway's.  Calloway's purchased Espoma products from a third party distributorship.  However, Defendants do not contest personal or subject matter jurisdiction or the propriety of venue.

## COUNT ONE:
## PATENT INFRINGEMENT '179 PATENT

10.    Defendants incorporate their answers to Paragraphs 1-9.

11.    For purposes of this litigation, Defendants admit the allegations of paragraph 11, except for the allegation that the '179 patent was duly and legally issued, which they deny.

12.    Defendants have never seen the alleged  license agreement and have no means of access to it, and consequently lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12.

13.    Denied.

14.    Denied.

15.     Denied.

16.     Denied.

17.     Denied.

## COUNT TWO:
## PATENT INFRINGEMENT '994 PATENT

18.     Defendants incorporate their answers to Paragraphs 1-17.

19.     For purposes of this litigation, Defendants admit the allegations of paragraph 19, except for the allegation that the '994 patent was duly and legally issued, which they deny.

20.     Defendants have never seen the alleged  license agreement and have no means of access to it, and consequently lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20.

21.     Denied.

22.     Denied.

23.     Denied.

24.     Denied.

25.     Denied.

## COUNT THREE:
## PATENT INFRINGEMENT '224 PATENT

26.     Defendants incorporate their answers to Paragraphs 1-25.

27.     For purposes of this litigation, Defendants admit the allegations of paragraph 27, except for the allegation that the '224 patent was duly and legally issued, which they deny.

28.     Defendants have never seen the alleged  license agreement and have no means of access to it, and consequently lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 28.

29.     Denied.

30.     Denied.

31.     Denied.

32.     Denied.

## COUNT FOUR:
## FALSE PATENT MARKING

33.     Defendants incorporate their answers to Paragraphs 1-32.  The allegations of this count are not directed to Calloway's.

34.     Espoma denies all allegations that it  has engaged in false marking in violation of Section 292.

35.     Admitted that Espoma introduced and began selling the Bio-tone® Starter in January 2006 and that a 2006 press release for the product was placed on the Espoma website. Espoma denies that it has continued to advertise and sell Bio-tone® Starter.  Espoma dropped the Bio-tone® Starter product at the end of 2008 and removed it from the product listing in Espoma's catalog.

36.     Admitted.

37.     Espoma did not introduce Espoma Organic® Lawn Food in 2009 – it was introduced in 2008.  The press release announcing the product introduction said that Espoma applies its patented blend of Bio-tone® microbes to the material, but that statement was a mistake made because of Espoma not understanding the difference between patented and proprietary,  Espoma believing that AMS had patented the microbial solution.  When Espoma found that there was a difference in meaning that had a legal significance, and that AMS did not have a patent, Espoma changed the product labels and advertising materials to remove the term patented.

38.     Admitted that the press release for 2009 products contained the quoted statement that the products were enhanced with patented Bio-tone® beneficial microbes, but this was just a mistake of not understanding the difference between patented and proprietary and believing that AMS had patented the microbial solution.  When Espoma found that there was a difference in meaning that had a legal significance and that AMS did not have any patents, it ordered new labels and changed the  advertising materials to remove the term patented.  This occurred in or around June 2009.

39.     Admitted that the bag labels contained the words "patented blend of  beneficial microbes", but this was just a mistake of not understanding the difference between patented and proprietary and believing that AMS had patented the microbial solution.  When Espoma found that there was a difference in meaning that had a legal significance and that AMS did not have any patents, it changed the product labels and advertising materials to remove the term patented.  This occurred in or around June 2009.

40.     Denied.  False marking requires an intent to deceive the public.  It is not false marking for Espoma to have made a mistake about whether AMS had a patented microbial solution instead of a proprietary solution, and to have corrected the labels and advertising when it learned of that mistake.

41.     Admitted that the products listed had the term patented on the bag labels, but denied that this was false marking for the reasons stated in answer to paragraph 40 above.

42.     Admitted.

43.     Admitted.

44.     Denied.  Espoma did not used the term "patented" in advertising or on its product labels with any intent of deceiving the public.  At the time when Espoma used the term "patented", Espoma did not know that the term "patented" had any legal significance and thought it meant a proprietary product.  At that time, Espoma also believed that AMS had a patent or patents covering the microbial solution it sold to Espoma.  When Espoma learned that the term "patented" should not be used unless a patent had issued and that AMS did not have a patent on the microbes, it changed the label on all subsequent product bags, and tried to remove all references to a patented microbial solution from its advertising.  When the second amended complaint informed Espoma that its website www.espoma.com still contained the old press releases described herein which contain references to a patented microbial solution, Espoma has promptly taken steps to find and remove such materials.  Espoma also denies the implication that it did not change the labels until Plaintiff's brought this action for patent infringement.  Espoma ordered bags with the changed labels in or about June 2009.

45.     Espoma denies the allegation that the use of the term patented was not a mistake, and the implication that Espoma is sophisticated in patent law.  Espoma admits that it owns the following trademarks that are registered with the USTPO:  Bulb-tone®; Citrus-tone®; Garden-tone®; Flower-tone®; Holly-tone®; Palm-tone®; Plant-tone®; Rose-tone®; Tomato-tone®; Tree-tone®; Espoma Organic® Lawn Food; Bio-tone®; and StarterBio-tone® Starter Plus, but these registrations are done by lawyers, not by Espoma.  Espoma admits that it has been in business since 1929.  Espoma denies all of the remaining allegations in this Paragraph.

46.     Espoma lacks sufficient information regarding Rhizogen licenses or sales to admit or deny that allegation.  Espoma denies the remainder of the Paragraph.

47.     Denied.

48.     Denied.

49.     Denied.

50.     Denied.

51.     Denied.

52.     Admitted that patent policy recognizes an important public interest in permitting the full and free competition in the use of information that is in the public domain.  That is the reason the patent laws require that patents are to be held invalid if they claim something was in prior use or on sale before the purported date of invention, or would have been obvious in view of the prior art.   Espoma denies that this public interest is exemplified by the microbial blends that Espoma referred to as patented.  To the best of Espoma's knowledge and belief, no one was

persuaded to buy or dissuaded from buying its products by the use of the term patented instead of proprietary.

53.     Denied.  To the best of Espoma's knowledge and belief, no one was dissuaded from entering the fertilizer or microbial markets, no one was deterred from scientific research, and no one invested any money to analyze the validity or enforceability of any patent, because of Espoma's mistake in saying patented instead of proprietary.

54.     Denied.  The Constitution is not in danger.

55.     Denied.  To the best of Espoma's knowledge and belief, no one incurred any cost by trying to ascertain whether Espoma controls the intellectual property of the microbial blends.

56.      Denied.  To the best of Espoma's knowledge and belief, no one intending to participate in the market for fertilizer or for microbial fertilizer additives incurred any cost of determining whether there are patents owned by or licensed to Espoma.

57.     Denied.  A patent does not mean that a product is superior to previously available products.  A patent implies that a product is different than what was previously available, but not that it is better.  To the best of Espoma's knowledge and belief, no one believed that the Espoma products were better than others based upon the word patented.

58.     Denied.  To the best of Espoma's knowledge and belief, there are people in the United States who do not want to make fertilizer.

59.     Denied.  To the best of Espoma's knowledge and belief, no one was discouraged from competing with Espoma.

60.     Denied.

61.     Denied.

62.     Denied.

63.     Denied.

64.     Denied

65.     Denied.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

66.     Defendants have not engaged in any acts which would constitute infringement of any valid and enforceable claim of the '179 patent.

67.      Defendants have not engaged in any acts which would constitute infringement of any valid and enforceable claim of the '994 patent.

68.     Defendants have not engaged in any acts which would constitute infringement of any valid and enforceable claim of the '224 patent.

## SECOND AFFIRMATIVE DEFENSE

69.     The '179 patent and each of the asserted claims of the '179 patent are invalid for failure to comply with the statutory provisions for patentability and validity set forth in Title 35 of the United States Code, including one or more of 35 U.S.C. §§ 102, 103, and 112.

70.     The '994 patent and each of the claims of the '994 patent are invalid for failure to comply with the statutory provisions for patentability and validity set forth in Title 35 of the United States Code, including one or more of 35 U.S.C. §§ 102, 103, and 112.

71.     The '224 patent and each of the claims of the '224 patent are invalid for failure to comply with the statutory provisions for patentability and validity set forth in Title 35 of the United States Code, including one or more of 35 U.S.C. §§ 102, 103, and 112.

## THIRD AFFIRMATIVE DEFENSE

72.     The '179 patent, 994 patent, and the '224 patent are unenforceable because of inequitable conduct before the USPTO.  The detailed allegations as to such inequitable conduct are contained in Espoma's Third Counterclaim set forth below and are incorporated here by reference.

## FOURTH AFFIRMATIVE DEFENSE

73.     Plaintiffs are estopped from asserting a scope for the claims of the '179 patent, '994 patent, and the '224 patent that exceeds the literal claim language because of representations, arguments, and/or amendments made during prosecution of the '179 patent, 994 patent, and the '224 patent in the USPTO.

## FIFTH AFFIRMATIVE DEFENSE

74.     Upon information and belief, Plaintiffs have failed to comply with the patent marking and notice requirements of 35 U.S.C. § 287 with respect to the '179 patent, which limits Plaintiffs' recovery of damages for alleged infringement of the '179 patent.

75.     Upon information and belief, Plaintiffs have failed to comply with the patent marking and notice requirements of 35 U.S.C. § 287 with respect to the '994 patent, which limits Plaintiffs' recovery of damages for alleged infringement of the '994 patent.

76.     Upon information and belief, Plaintiffs have failed to comply with the patent marking and notice requirements of 35 U.S.C. § 287 with respect to the '224 patent, which limits Plaintiffs' recovery of damages for alleged infringement of the '224 patent.

## SIXTH AFFIRMATIVE DEFENSE

77.     Plaintiffs are not entitled to any relief or recovery by reason of its coming into this Court with unclean hands in seeking to enforce a patent which Plaintiffs know to be invalid, unenforceable, and/or not infringed.

## SEVENTH AFFIRMATIVE DEFENSE

78.      Defendants have not engaged in any acts which would constitute false marking under the Patent Laws of the United States.

## COUNTERCLAIMS BY ESPOMA

79.     The below counterclaims arise under the Federal Declaratory Judgments Act, 28 U.S.C. § 2201, et seq.  The Amended Complaint in this action alleges infringement by Espoma

of the '179 patent, 994 patent, and the '224 patent and gives rise to an actual case or controversy under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

80.     The below counterclaims also arise under the patent laws of the United States, 35 U.S.C. § 100, et seq.

81.     This Court has subject matter jurisdiction over the counterclaims by virtue of 28 U.S.C. §§ 1338, 2201, and 2202.

82.     Venue in this District is proper under 28 U.S.C. § 1391.

83.     Espoma is entitled to declaratory relief because, although Espoma has not infringed the '179 patent, 994 patent, and the '224 patent, Espoma will sell manure-based fertilizer products after the '179 patent, 994 patent, and the '224 patent are declared not infringed, invalid, and/or unenforceable.

84.     For each counterclaim against Plaintiffs, Espoma demands a jury trial on all issues so triable.

## FIRST COUNTERCLAIM

(for Declaratory Judgment of Patent Invalidity)

85.     Espoma incorporates the allegations set forth in paragraphs 1 through 51 above by reference, with the same force and effect as if set forth here in their entirety.

86.     This counterclaim seeks a declaratory judgment that some or all of the claims of the '179 patent, 994 patent, and the '224 patent are invalid.

87.     Some or all of the claims of the '179 patent, 994 patent, and the '224 patent are invalid for failure to meet the conditions for patentability under 35 U.S.C. §§ 101, 102, 103 and/or 112.

## SECOND COUNTERCLAIM

(for Declaratory Judgment of Patent Unenforceability)

88.     Espoma incorporates the allegations set forth in paragraphs 1 through 54 above by reference, with the same force and effect as if set forth here in their entirety.

89.     This counterclaim seeks a declaratory judgment that the '179 patent, '994 patent, and the '224 patent and any future patents issued from continuations of the same common patent (hereafter "the Porubcan Patents")are unenforceable.

90.     The Porubcan Patents are unenforceable because of inequitable conduct before the USPTO, as described hereafter, by the named inventor and his attorney in the preparation and prosecution of the original application and the continuations thereof which issued as Porubcan Patents.

91.     The sole named inventor of the Porubcan Patents is Randolph Porubcan.  The sole attorney who prosecuted Porubcan Patents is Jeffery Wendt.

92.     The nature of the inequitable conduct is that the attorney failed to disclose to the USPTO highly material information of which the inventor was aware and of which the attorney himself was or should have been aware, and that the attorney thereafter made material statements to the USPTO that were misleading characterizations of the purported invention and of the prior art, which statements were contradictory to the information which he failed to disclose.

93.     Some information that was not disclosed to the USPTO is that the mixture of Bacillus spores disclosed and claimed in the Porubcan Patents were contained in a commercial liquid fertilizer product called BioStart that had been on sale in the United States since a least as early as 1993 by the inventor's own company, Advanced Microbial Systems, Inc.  For example, the group of Bacillus spores; specifically Bacillus *cersus*, Bacillus *laterosporus* (2 strains), and Bacillus *mycoides*, recited in claim 1 of the '179 and its dependant claims were the mixture of Bacillus spores in the BioStart product.  The inventor was President of Advanced Microbial Systems, Inc. at the time and had knowledge of these commercial sales.

94.     Additional information that was not disclosed to the USPTO is that Advanced Microbial Systems, Inc. cooperated with a California based fertilizer company named Natural Resources Group Inc. in or about 1993 to developed a liquid fertilizer made from chicken manure into which BioStart was blended during an aerobic digestion process to decontaminate the manure and make it suitable for use on food crops.  This fertilizer containing decontaminated chicken manure and Bacillus bacteria was and still is sold in the United States under the name Nature's Solution.  The inventor was President of Advanced Microbial Systems, Inc. at the time and had knowledge of this joint development and commercial sales of Nature's Solution.

95.     Further information that was not disclosed to the USPTO is that during the period of  about 1995 and 1996 Advanced Microbial Systems, Inc. conducted or sponsored field trials in the United States on increasing crop growth by using a mixture of the BioStart microbial fertilizer and the Nature's Solution decontaminated chicken manure fertilizer.  The description and results of these field trials were published by Advanced Microbial Systems, Inc. at least as early as 1998 as marketing materials for BioStart. The inventor was President of Advanced

Microbial Systems, Inc. at the time and had knowledge of these field trials and of the printed publications describing the trials and results.

96.    This information that was not disclosed to the USPTO was highly material to patentability under  35 U.S.C. §§102(b) and 103, because it would have significantly narrowed the differences between the subject matter sought to be patented and that which was already known or used by others in this country before the invention, and it would have provided the exact motivation for making the claimed invention that the patent attorney said was lacking in the prior art.  There were no prior art references before the Examiner that showed that the exact mixture of Bacillus spores disclosed and claimed in the patents was a commercial prior art fertilizer, that the same Bacillus spores had been used to develop a decontaminated chicken manure fertilizer for another commercial entity, and that the same spores had been publically used in a fertilizer mixture along with the decontaminated chicken manure several years before the original patent application was filed.

97.    The failure of the inventor and the attorney to disclose this highly material information was done with the intent to deceive the USPTO.  While intent can be inferred from the high degree of materiality, there is direct evidence of such intent found in the patent application, which was written to conceal the use of the prior art BioStart and the prior art Nature's Solution in the experiments used to demonstrate the utility of the invention.   The "Experiment 1"  and "Experiment 2" in the patents are each described as being made by applying a different single strain of Bacillus in each experiment to a plot of carrots.  The actual experiments were field trials done several years before the patent application by applying the commercial BioStart fertilizer to the carrot plots, and they were described in the printed publications which Advanced Microbial Systems, Inc. distributed as marketing materials for

BioStart at least as early as 1998.  The deliberate act of changing the description of the experiments to conceal the use of BioStart is evidence of the intent to deceive by not disclosing Biostart and the publication of the field trials to the USPTO.

98.     In the same vein, "Experiment 4" is described in the patents as field tests of  two strains of Bacillus spores and a decontaminated chicken manure that provide evidence that Bacillus and decontaminated manure have an unexpected synergistic effect.  The actual field tests were done in 1996 with the BioStart commercial product liquid and a liquid decontaminated chicken manure, probably Nature's Solution, and were described and published by Advanced Microbial Systems, Inc. at least as early as 1998 as marketing materials for BioStart.  The deliberate act of changing the description of the experiment to conceal the use of the commercial prior art products is evidence of the intent to deceive by not disclosing Biostart, Nature's Solution and the printed publications of the field trials.

99.     No plausible explanation exists for the inventor and prosecuting attorney not disclosing to the USPTO the existence of BioStart, Nature's Solution, the public use of a combination of BioStart and Nature's Solution, and the printed publications other than an intent to conceal highly material prior art information from the USPTO.

100.     The failure to disclose BioStart, Nature's Solution, the combination of BioStart and Nature's Solution  and the publications describing the field trials enabled the prosecuting attorney to make representations to the USPTO that he could not have made had he disclosed the information.  For example, in a Response filed on October 14, 2004, the attorney argued that the experiments, particularly Experiment 4, showed a "unique synergism" between Bacillus spores and decontaminated manure, and that the prior art contained "no motivation" to combine

decontaminated manure and Bacillus bacteria.  The attorney could not have made those arguments if he had disclosed that actual experiments were done with the BioStart and Nature's Solution in 1996 and were described in marketing materials published in 1998.  The deliberate act of changing the description of Experiment 4 to conceal the use of the commercial prior art products, while using the same experiment to get the patents allowed,  is evidence of intent to deceive.

101.    The attorney's arguments about Experiment 4 were highly relevant to the allowance of the patents as the Examiner relied specifically upon them to allow the patents, giving as his reason for allowance that…"Although the treatment of manure to decontaminate it for use as a fertilizer is known in the art and the use of  microorganisms for composting or enhancing the quality of the soil for plant growth is also known, there is no teaching or fair suggestion or motivation to combine the two as the applicant has done and obtained the synergistic results as pointed out on Page 16 at Experiment #4."

102.    Espoma is entitled to a declaration that the Porubcan Patents are unenforceable due to inequitable conduct.

## FOURTH COUNTERCLAIM

(for Declaratory Judgment of Patent False Marking)

103.    Espoma incorporates the allegations set forth in Paragraphs 1 through 69 above by reference, with the same force and effect as if set forth here in their entirety.

104.    In this counterclaim, Espoma acts as a Relator under 35 USC §292 on behalf of itself and of the United States.   This counterclaim seeks a declaratory judgment that Plaintiffs have falsely marked its fertilizer products and used in advertising the patent numbers for the '179

patent, 994 patent, and/or the '224 patent for the purpose of deceiving the public as described herein.

106. Plaintiffs advertise on www.rhizogen.com that "Our products & technology are covered by U.S. Patents 6,878,179, 7,044,994 and [sic] 7,442,224".

106. Upon information and belief, since at least as early as July 2010, Plaintiffs have marked the packaging for the products and advertised that the products, AG-LIFE®, FORETURF®, and DEFENDER® ("Counter-defendants' Products") are covered by the '179 patent, 994 patent, and the '224 patent.

107. The claims of the '179 patent, 994 patent, and the '224 patent require a decontaminated manure.

108. The '179 patent, 994 patent, and the '224 patent all describe decontaminated manure as being different from sterilized manure.

109. Plaintiffs admit on www.rhizogen.com that "Rhizogen starts with poultry compost that has been completely sterilized at temperatures up to 800 F, killing all pathogenic materials."

110. Plaintiffs are and have been in the microbial products industry for years, and understand that completely sterilizing manure by high temperature does not produce a decontaminated manure as described in the '179 patent, 994 patent, and/or the '224 patent.

111.    Plaintiffs' false marking was done without a good faith basis to believe that its products were covered by the patent numbers marked on the advertisements and/or products, and therefore was a deliberate and executed intent to deceive the public.

## PRAYER FOR RELIEF

WHEREFORE, Espoma prays for the following relief:

A.      That Judgment be entered in favor of Defendants and against  Plaintiffs on each and every count in the Amended Complaint and in favor of Espoma on each and every Counterclaim;

B.      That Judgment be entered declaring that neither the Espoma nor the Espoma products infringe the '179 patent, 994 patent, or the '224 patent;

C.      That Judgment be entered declaring the claims of the '179 patent, 994 patent, and the '224 patent invalid;

D.      That Judgment be entered declaring the '179 patent, 994 patent, the '224 patent and any future patents issued from continuations of the same common patent application are unenforceable;

E.      That Judgment be entered permanently enjoining and restraining Plaintiffs, its officers, agents, servants, employees and attorneys, and all others acting for, on behalf of, or in active concert or participation with any of them, from stating, implying, or suggesting that Defendants or the Espoma products infringe the '179 patent, 994 patent, or the '224 patent;

F.      That Judgment be entered declaring that Plaintiffs have falsely marked one or more of its advertisement and/or products and, per 35 U.S.C. § US 292, order Plaintiffs to pay

$500 per false marking offense, or an alternative amount a determined by the Court, one-half of which shall be paid to the United States, and the other half of which shall be paid to Espoma.

G.     That Judgment be entered declaring that this case is exceptional under 35 U.S.C. § 285 and that Defendants be awarded their reasonable attorneys' fees and expenses;

H.     That Defendants be awarded their costs in this action; and

I.     That Defendants be awarded such other and further relief as the Court deems just and proper.

Dated: 21 September 2010

Respectfully

/s/ John J. Marshall
Admitted pro hac vice
PA Bar. 30574
Drinker, Biddle & Reath, L.L.P.
1000 Westlakes Drive, Suite 300
Berwyn, PA 19312.
john.marshall@dbr.com
Tel:  610-993-2274
Fax:  610-993-8585
Lead Counsel for The Espoma Company

## CERTIFICATE OF SERVICE

I certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 21st day of September, 2010.  Any other counsel of record will be served by first class mail.

/s/ John J. Marshall

PHIP/ 841136.2